**Charles Estel JOHNSON, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the AIR FORCE, Defendant.**

**No. Civ–78–0836–D.**

United States District Court,
W. D. Oklahoma.

Dec. 31, 1980.

Claude V. Sumner, Oklahoma City, Okl., for plaintiff.

Larry D. Patton, U. S. Atty., by John E. Green, First Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This is an action brought by Plaintiff to recover actual and punitive damages for alleged violations of the Privacy Act of 1974, 5 U.S.C. § 552a, arising out of the circulation of a petition by and among Plaintiff's co-workers at the Oklahoma City Air Logistics Center (OCALC) at Tinker Air Force Base.[1] Said petition purportedly claimed Plaintiff was responsible for a "no-reading" policy in the Data Automation Division of OCALC. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

On October 27, 1980, this case came on for non-jury trial before the Court at which a total of nine witnesses testified on behalf of Plaintiff and three witnesses testified on behalf of Defendant and numerous exhibits were received into evidence.[2]

The evidence before the Court establishes that the petition in question (Plaintiff's Exhibit 2) was originated and was circulated by employees of the Defendant and co-workers of Plaintiff in 1976 without any official action or sanction on the part of the Defendant. The petition and the signature sheet attached thereto (Plaintiff's Exhibit 3) were given to Tom L. Wilson, who was a supervisory computer operator at Tinker Air Force Base and Plaintiff's supervisor at the time. The petition and signature sheet were subsequently forwarded to Keneth L. Hall (Hall), the Deputy Chief of the Data Automation Division, who presented the same to Colonel Herbert J. Suskin, the Chief of the Data Automation Division. After consulting with Hall, Col. Suskin determined that the petition was a matter of concern to Plaintiff's union and not the Defendant and that the petition should therefore be turned over to the union. Consequently, George D. Findley (Findley), who was the Senior Data Automation Union Steward for the American Federation of Government Employees (AFGE) Local 916, was called in and the petition was given to him by either Hall or Col. Suskin. However, it appears that while the petition and signature sheet were still in the possession of the Defendant in August of 1976, Plaintiff filed a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking a copy of the petition and the signature sheet from the Defendant. See Plaintiff's Exhibit 4. In response to this request, Plaintiff was provided with a copy of the petition but not the signature sheet because there was a question as to whether the names could be released. See Plaintiff's Exhibit 5. Plaintiff pursued his administrative remedies and was eventually successful in obtaining a copy of the signature sheet. See Defendant's Exhibit 2. Thereafter, Plaintiff filed another FOIA request in 1978 seeking the *original* petition and signature sheet. However, this request was denied on the basis that copies of these documents had already been provided to Plaintiff and "[a] search of files revealed

---

1. On May 30, 1979, the Court granted Defendant's Motion to Strike Plaintiff's prayer for punitive damages on the grounds that such damages are not available in a civil action such as this case against a governmental agency for alleged violations of the Privacy Act.

2. At the trial of this case, Plaintiff offered into evidence as Plaintiff's Exhibit 11, a copy of his letter of resignation as shop steward for American Federation of Government Employees Local 916. The Court reserved ruling on the admissibility of this exhibit. Upon consideration of Plaintiff's Exhibit 11, the Court determines that the same should be admitted into evidence and will be considered by the Court insofar as said exhibit is relevant to the issues herein.

that the documents no longer existed," as the original petition and signature sheet had been turned over to Findley as the representative of AFGE Local 916 before Plaintiff's second FOIA request was filed. *See* Defendant's Exhibit 2.

The Privacy Act generally deals with disclosure of, access to and the maintaining of "records" and a "system of records" by federal agencies.[3] In this regard, Plaintiff contends that the Privacy Act was violated by Defendant in this case through Defendant's collection and disclosure of information on Plaintiff (i.e. the petition in question) to a third party, Plaintiff's union. The Defendant contends that the petition was not maintained in a "system of records" as defined by the Privacy Act and thus there was no violation of the Privacy Act. The Court agrees with the Defendant.

There is no evidence before the Court that the Defendant officially authorized or participated in any manner in originating and circulating the petition. Furthermore, the evidence before the Court is uncontroverted that the petition was not placed in Plaintiff's official personnel file or the separate personnel file maintained by the OCALC Comptroller on all the Comptroller's employees such as Plaintiff, nor was the petition included in any pay records or any other records maintained by the Defendant. Therefore, after due consideration of the evidence, the arguments of counsel and the applicable law, the Court determines that the petition in question was not maintained in a system of records within the meaning of the Privacy Act. Accordingly, Defendant's disclosure of the petition to Plaintiff's union did not constitute a violation of the Privacy Act. In view of the foregoing, the Court finds and concludes

that judgment should be entered herein in favor of Defendant and against Plaintiff dismissing Plaintiff's action.

---

**3.** 5 U.S.C. § 552a(a) contains the definitions pertinent to the Privacy Act and provides in relevant part as follows:

(3) the term "maintain" includes maintain, collect, use, or disseminate;

(4) the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;

(5) the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual; . . . .